## Malloy License

*Paul P. Wisler*, for Secretary of Revenue.
*William F. Fox*, for appellant.

KNIGHT, P. J., November 15, 1951.—Leslie LeRoy Malloy, after a hearing before a representative of the Secretary of Revenue, received a notice that his operator's license had been suspended for a period of six months from August 21, 1951, by virtue of section 615 of The Vehicle Code of May 1, 1929, P. L. 905, as amended—reason, "reckless driving".

On September 13, 1951, Malloy presented his petition praying the court to set a date to take testimony and examine into the facts of the case.

The prayer of the petition was granted and a hearing held on October 26, 1951.

At the hearing the following facts were developed. On January 3, 1951, and on occasions before that date appellant, Malloy, and an accomplice shot out numerous street lights in and about Phoenixville in Chester County and in and about Norristown in Montgomery County. At the same time or times they turned in false fire alarms in both counties. It was testified without contradiction that they used an automobile to get from one place to the other and that they drove along the roads shooting out lights. Sometimes they used the car of Malloy, sometimes that of the accomplice. On January 3, 1951, the car of the accomplice was used, but it was testified without contradiction that Malloy and his accomplice took turns driving the car on that night. Malloy and his accomplice pleaded guilty to bills charg-

ing them with malicious mischief and turning in false fire alarms in the courts of both counties and were sentenced by both courts.

There is no evidence that Malloy or his accomplice operated a motor vehicle in a reckless manner on the times in question and if the suspension is to rest on that ground, the appeal must be sustained. Section 615 (a) of The Vehicle Code, 75 PS §192, provides that the Secretary of Revenue may suspend the operating privilege of any person, with or without hearing, whenever the secretary finds upon sufficient evidence:

"2. That such person has been convicted of a misdemeanor, or has forfeited bail upon such a charge, in the commission of which a motor vehicle was used."

Defendant has pleaded guilty to at least four bills, each charging him with a misdemeanor; hence we are confronted with the following questions:

1. Were the misdemeanors committed by Malloy so intimately connected with the operation of a motor vehicle as to bring him within the scope of paragraph 2 of section 615 (a) of The Vehicle Code, as quoted above?

2. Is this court limited to a consideration of the charge made by the secretary, namely, reckless driving; or may the court make its own determination as to whether the license should be suspended?

Taking up the first question it will be noted that the secretary may suspend an operator's privilege for many reasons other than that set forth in paragraph 2 quoted above. For instance, that a person was convicted of manslaughter resulting from the operation of a motor vehicle, paragraph 3 of section 615 (a); that such person has committed any violation of the motor vehicle laws of the Commonwealth, paragraph 2, section 615 (b). It would seem then that paragraph 2 was designed to cover misdemeanors other than those arising out of and due entirely to the operation of a

motor vehicle, otherwise paragraph 2 would have no meaning for misdemeanors due entirely to the operation of a motor vehicle are covered by paragraph 3 of section 615(a) and paragraph 2 of section 615(b), above cited.

This interpretation finds some support by a consideration of paragraph 3 of section 614 of The Vehicle Code, which deals with the revocation of the operating privilege. The paragraph provides for revocation for "any crime punishable as a felony under the motor vehicle laws of this Commonwealth, or any other felony in the commission of which a motor vehicle is used". This would indicate that a license may be revoked for felonies other than those due entirely to the operation of the car.

We are of the opinion, however, that to come within the swathe of paragraph 2 of section 615(a), the misdemeanor must have some reasonable relation to the operation of the motor vehicle and the use of the machine must contribute in some reasonable degree to the commission of the misdemeanor. We take judicial notice that Phoenixville in Chester County and Norristown in Montgomery County are a number of miles apart and Malloy and his companion could not have shot out the street lights in both places on the same night without the use of an automobile. Also, a motor vehicle is a very convenient way of leaving the scene after turning in a false fire alarm. The evidence discloses that Malloy operated a motor vehicle during part of the time that the misdemeanors were committed and we are of the opinion that the use of the machine contributed to such a degree in the commission of the offenses as to bring Malloy within the swathe of paragraph 2 of section 615(a) of The Vehicle Code.

The only case we could find or which has been brought to our attention in which the facts were sim-

ilar to the facts of the case at bar is Dieter License, decided in January 1951 and reported in 76 D. & C. 181. In this case Judge Frack of Northampton County sustained an appeal from the suspension of an operator's license upon the following facts:

Dieter was riding as a passenger in an automobile operated by another who was allegedly intoxicated. The machine was stopped by a State policeman who requested the driver to get out and get in the policeman's car. The driver complied, whereupon Dieter and another passenger got out of the car they were riding in and told the policeman he could not take their friend to be examined. An altercation followed in which Dieter and his companions assaulted the police officer. Dieter was convicted of the misdemeanor of obstructing an officer in the making of an arrest. On a certified copy of this conviction the secretary suspended Dieter's operator's license.

Judge Frack held that the misdemeanor had no connection with the operation of the automobile and sustained the appeal. On the facts of the Dieter case we agree with Judge Frack, but if the decision is to be interpreted as holding that only misdemeanors attributed to the actual operation of an automobile are contemplated under paragraph 2 of section 615(a), then we must respectfully disagree with the learned judge of Northampton County.

Turning now to the second question, we find that section 616 of The Vehicle Code, as amended, provides for appeals to the court of common pleas from the action of the Secretary of Revenue suspending an operator's license. This section says in part:

". . . and such Court is hereby vested with jurisdiction, and it shall be its duty, to set the matter down upon thirty (30) days written notice to the Secretary, and thereupon to take testimony and examine into the

facts of the case, and to determine whether the petitioner is subject to suspension of operator's license."

In construing this language the courts have universally held that the hearing in the common pleas is de novo and the court is to hear evidence and to determine in the exercise of sound discretion whether the license should be suspended: (a) Oesterling Appeal, 347 Pa. 241; (b) Hardwick Automobile Case, 348 Pa. 266; (c) Commonwealth v. Cole, 350 Pa. 369; (d) Commonwealth v. Wagner, 364 Pa. 566 (1950).

In Commonwealth v. Cronin, 336 Pa. 469 (1939), in the course of the opinion the Supreme Court in speaking of the hearing on appeal to the court of common pleas said (page 473):

"At such hearing neither the action of the Secretary nor the testimony taken before his representative is properly part of the record of the case."

It is not our duty to review the decision of the Secretary of Revenue but to determine under the evidence and law if the license of Malloy should be suspended: Commonwealth v. Wagner, supra. We are, therefore, of the opinion, and so hold, that we are not bound by the reason advanced by the secretary for suspending the license.

The conduct of this defendant was most reprehensible; the shooting out of street lights is a reckless, wanton and serious form of malicious mischief and the turning in of false fire alarms is not only dangerous to life and property but is in itself a contemptible thing to do. We are of the opinion that under the law and the facts this license should be suspended.

And now, November 15, 1951, the appeal of Leslie LeRoy Malloy from the suspension of his operator's license for a period of six months from August 21, 1951, is dismissed at the cost of appellant and the suspension imposed by the Secretary of Revenue affirmed.